## Case No. 13,034.

### SMITH v. CUMMINGS et al.

[1 Fish. Pat. Cas. 152; [1] 9 Leg. Int. 82.]

Circuit Court, E. D. Pennsylvania. May 11, 1852.

INJUNCTION — PERFORMANCE OF CONTRACT — CONTROVERSY AS TO EQUITIES OF THE PARTIES.

1. It has been matter of grave question whether the writ of an injunction should ever be employed, to compel a defendant to perform his contract.

2. To issue an injunction while there is a substantial controversy as to the equities of the parties, and upon a simple motion which does not permit those equities to be inquired of and defined according to the approved usages of chancery, would be carrying the remedy by injunction too far.

In equity. This was a motion for a provisional injunction. Complainant [Francis O. J. Smith] was an assignee of S. F. B. Morse, under his patent for electric telegraphs. Defendants [A. B. Cummings, J. K. Moorehead, Joshua Hanna, and others] were operating under a license from parties also claiming under Morse. The bill charged the defendants with such a violation of the terms of their license, as rendered them infringers. The defendants denied that they had violated their agreement, except by the fault of the complainant. Affidavits were filed on both sides.

George Harding, for complainant.
Henry M. Watts, for defendants.

KANE, District Judge. The motion for an interlocutory injunction in this case has for its object to restrain the defendants from using the Morse telegraph on the line under their charge, between Harrisburg and Philadelphia. The bill and accompanying affidavits set forth an agreement, or license, from the patentees, to those under whom the defendants claim, but asserts that the defendants have altogether failed to comply with their engagements, which were the conditions on which the license was granted.

The counter-affidavit of one of the defendants, the only one that has been read in opposition to the motion, denies all purpose to violate either the patent or the contract for using it; but it avers that, on the contrary, they have sought to keep their engagements with the patentees, and have proffered, at different times, to perform them fully, provided the patentees, or the complainant, as their representative, would perform their engagements toward the defendants; and it charges, that the contract has been and now remains broken, by the complainant, and those under whom he derives title, to the great damage of the defendants; and that the complainant and patentees have, by their own acts, incapacitated themselves for now performing their part of it; for which injuries sustained by the defendants, they say they are without adequate recourse otherwise than by the action of this court, on a full view of the matters embraced in this cause. They further assert that their means are ample to satisfy any decree that may be made against them, and that they would necessarily sustain very grievous harm if the injunction were granted.

There are other asserted grounds of opposition to the motion, which I need not now advert to. The points of fact presented and controverted by the affidavits, and to be passed on by the court, are numerous—involving questions of feeling, and seemingly of good faith. I have, of course, formed no opinion whatever in regard to any of them. But on the case being opened, I was strongly impressed with the opinion that it was not one to be safely dealt with on an interlocutory proceeding, and to that opinion I adhere.

It has been matter of grave question whether the writ of injunction should ever be employed to compel a defendant to perform his contract, and there is certainly no case in which such a writ has been awarded, without exacting, as preliminary, the full performance of equity by the complainant. To issue it while there is a substantial controversy as to the equities of the parties, and upon a simple motion which does not permit those equities to be inquired of and defined, according to the approved usages of chancery, would be to go further than I believe it has ever been contended that a chancellor ought to go. See 3 Daniell, Ch. Prac. pp. 1881, 1882.

Such seems to me the case here. It is impossible to read over the affidavits of the parties, as I have done since the adjournment, without seeing that there are facts in controversy between them, on which it would be most unsafe for me to pass without full and orderly proofs. Were I to arrest the operations of the defendants by an unconditional order, in anticipation of such proofs, I might find, hereafter, that I had inflicted irreparable injury upon a party already aggrieved, or that I had coerced the defendants to a surrender of rights which it was my duty to have protected. To frame a conditional order would be to assume a knowledge of the merits, much more accurate than I am willing, in a case like this, to infer from ex parte affidavits.

On the other hand, to refuse the writ at the present time, is not, I apprehend, to

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

peril the rights of the complainant, or seriously to delay his vindication of them. It is to save both parties the expense and labor of a preliminary hearing, repeatedly adjourned to allow the preparation of counter-affidavits, on the one side or the other, and unsatisfying at last. and to leave the judicial mind unbiassed till the cause is ripe for a final adjudication. Motion dismissed.

[For other cases involving this patent, see note to Smith v. Ely, Case No. 13,043.]